# The Beaver Falls Water-power Co. *et al. versus* Wilson.

Where the canal commissioners, in constructing the Pennsylvania canal in 1834 entered into an agreement for a valuable consideration to supply water-power to T.'s mill, through a waste-weir in the canal bank, and in 1845 sold a part of the canal to the Erie Canal Company, subject to the water rights of riparian owners, and by a sheriff's sale in 1872 and mesne conveyances, a portion of the lands of the canal, but not its franchises, became vested in a private corporation, and the canal, as such, was abandoned: *Held*, that the purchaser at sheriff's sale and his vendees took the property subject to the right of T.'s vendees to an unrestricted flow of water through the canal and waste-weir to T.'s mill.

November 14th 1876.   Before AGNEW, C. J., SHARSWOOD, GORDON, PAXSON and WOODWARD, JJ.   WILLIAMS and MERCUR, JJ., absent.

Appeal from the Court of Common Pleas of *Beaver county:* Of October and November Term 1876, No. 266.

This was a bill in equity filed by Wade Wilson to restrain the Beaver Falls Water-power Company and the trustees of the Harmony Society from preventing the flow of water to his mill.

The bill set forth the following case:   Before and during the year 1834, David Townsend was the owner of a flouring mill, usually called the "Stone Mill," situated on the Beaver creek and supplied by water-power from that stream through the owner's dam at New Brighton.   In 1835, in the construction of the Beaver division of the Pennsylvania canal, the erection of the state dam at Bridgewater so injured the dam of the Beaver Falls Water-power Company, at Fallston, by backwater, as to make it necessary to raise the latter dam and this in turn would have been the cause of great injury to Townsend's water-power, at New Brighton.   Under these circumstances, in order to reduce the damages for which the Commonwealth would have been liable to the water-power company, an agreement was entered into between Townsend, the Beaver Falls

[Beaver Falls Water-power Co. *v*. Wilson.]

Water-power Company and the state canal commissioners, by which the latter agreed to furnish water-power to the Stone Mill, through a waste-wier in the canal bank, which was to be not lower than six inches below the fixed height of top water line of the canal, and of such width as to permit the passage of a sufficient quantity of water to propel the then machinery of the mill. Townsend agreed to authorize the Beaver Falls Water-power Company to raise their dam at Fallston to such height as might be necessary, and to release all damages. This agreement was fully carried out. The Stone Mill was carried on by Townsend and the successive proprietors without interruption, excepting at such times as the water was drawn from the canal for the purpose of making repairs. After the death of Townsend, the Stone Mill became vested by various conveyances in Wilson, the plaintiff below. Under an Act of Assembly of 7th March 1843, the state authorized the transfer of this part of the canal to the Erie Canal Company, subject to a proviso (by sect. 17 of the act) that that company should "be bound by all the contracts heretofore made by the Commonwealth, when the same had been made by virtue of existing laws, in the grant or lease of water privileges," &c. The bill averred that the defendants, the water-power company, threatened to stop the supply of water to the plaintiff's mill, and prayed an injunction to restrain the defendants from such action.

The defendants' answer, admitting many of the averments of the bill, set forth that the privilege of using the water from the canal as a motive power had been given to Townsend by the commissioners without any consideration therefor moving from him to the Commonwealth; that the plaintiff's mill was not at the time of filing the answer, and had not been for many years, supplied by water through the waste-weir built by the Commonwealth, but through a passage way made by cutting down the bank of the canal to the bottom of the canal; that the mill had not been uninterruptedly used as a flour mill by its owners, but on the contrary had for some time been used as a foundry, and the original mill had been destroyed by fire and a new mill built on the same site; that the canal had long since been abandoned as such, and the property of the canal company had become vested in private persons, and that the then owners were not bound to keep the plaintiffs' mill supplied with water from the Beaver river at a point almost a mile distant therefrom, after the canal had ceased to be used for public purposes; that it required more water-power to propel the machinery of the mill at the time the answer was filed than in 1834; that the water-power company owned the dam at Beaver, from which the water was supplied to the canal, and that the trustees of the Harmony Society, defendants, who were also large stockholders in the water-power company, had become the owners in fee simple of that portion of the canal lying between the stone mill and the Beaver dam; and

that the water-power at the Beaver dam was greatly impaired by draining off water from it to supply the plaintiff's mill.

It further appeared that the change in the manner of supplying water to the plaintiff's mill was made in 1844, at the instance of the superintendent of the canal; that the mill was destroyed by fire in 1847, but rebuilt the next year, and that, though the mill was at one time used as a foundry, there had never been an intention on the part of the owners to abandon its use as a flour mill. The canal, as such, was abandoned in 1872, and the title to this portion of it (that is, its lands, locks and appurtenances) became vested in the trustees of the Harmony Society, defendants, by a sheriff's sale and sundry conveyances. The supply of water to the mill was flowing through the passage as it existed when this suit was begun, at the time of the purchase by the Erie Canal Company, January 1st 1845, and without interruption from 1844 to the beginning of these proceedings. It appeared that it was the intention of the water-power company, with the consent of the owners of the canal, to cut off the entire supply of water to the plaintiff's mill, and that this would be the cause of great and irreparable injury to him.

The court below (Stowe, A. L. J.) was of opinion that the passage-way to the plaintiff's mill, as it was changed in 1844, had been ever since then apparent and visible; that when the canal passed into the hands of the Erie Canal Company, an inceptive right arose against that company which, in twenty years, had grown into a complete legal title by prescription, and decreed a perpetual injunction to restrain the defendants from stopping the flow of water to the plaintiff's mill through the canal. The defendants below took this appeal.

*Wilson & Moore* and *E. B. Daugherty,* for the appellants.—The appellee can have no prescriptive right, as under the Act of 1843 the Erie Canal Company was *compelled* to allow the owners of his mill to use the water from the canal: Jessup *v.* Loucks, 5 P. F. Smith 350 ; besides, the same act saves to the Erie Canal Company all the privileges of the state; and one of these is immunity from the operation of the Statute of Limitations.

The rights given to Townsend, in 1834, by the canal commissioners, was of grace, and not of right; the damages to him were consequential, and not direct, and the state was not bound to compensate him : W. B. & S. Co. *v.* Mulliner, 18 P. F. Smith 357 ; Philad'a & Trenton Railroad Co., 6 Whart. 25 ; Monongahela Navigation Co. *v.* Coons, 6 W. & S. 101 ; Susquehanna Canal Co. *v.* Wright, 9 Id. 9.

The state could have abandoned the canal at any time : Branson *v.* Philadelphia, 11 Wright 332; Charles River Bridge *v.* Warren Bridge, 11 Peters 420 ; and the Erie Canal Company and the Har-

mony Society had the same right. This right was secured to the canal company by the Act of 31st March 1870. In the event of the exercise of this right, all grants of water rights would cease : Craig *v.* Allegheny City, 3 P. F. Smith 477 ; Commonwealth *v.* Penna. Railroad Co., 1 Id. 351.

*B. B. Chamberlain, S. B. Wilson* and *J. K. Piersol,* for the appellee.—The agreement made in 1834, between the Canal Commissioners, the Water-power Company and Townsend, was an irrevocable contract, founded upon a good consideration ; and although the state can abandon its canals, it cannot, in doing so, abrogate private rights. It is not a question of eminent domain, but of private rights acquired from the state.

The Act of 31st March 1870, authorized a sale for canal purposes ; gave purchasers rights for canal purposes only subject to existing rights in the appellee created in 1834 and saved in section 17 of the Act of 1843 : City of Allegheny *v.* O. & P. Railroad, 2 Casey 355. See, also, P. Railroad Co. *v.* Duquesne, 10 Wright 223 ; P. & R. Railroad Co. *v.* Philad'a, 11 Id. 325 ; Lambertson *v.* Hogan, 2 Barr 22 ; Iron City Bank *v.* Pittsburgh, 1 Id. 340 ; Paschall *v.* Passmore, 3 Harris 295 ; Phillips *v.* Phillips, 12 Wright 178.

The clear adverse use by the owners of the mill for over thirty years gives a right : Seibert *v.* Levan, 8 Barr 383 ; Esling *v.* Williams, 10 Id. 126 ; Strickler *v.* Todd, 10 S. & R. 69.

The Statute of Limitations runs against the grantees of the state : Evans *v.* Erie, 16 P. F. Smith 228.

Chief Justice AGNEW delivered the opinion of the court, January 2d 1877.

The foundation of the title of the plaintiff was a contract between the state through the Board of Canal Commissioners, and David Townsend. The board by a resolution directed the superintendent of the Beaver Division of the state canal to make a wasteweir in the canal of certain dimensions for the passage of water to Townsend's Stone Mill, on condition that Townsend should by a written agreement authorize the Beaver Falls Water Company at Fallston, to raise their dam to a certain requisite height. The reasons for the contract are set forth in a preamble to the resolution, and they display the consideration proceeding from Townsend. A state dam constructed below flowed back the water of the Beaver upon the mills of the water company at Fallston making it necessary for them to raise their works and dam. This they could not do without the consent of Townsend, who was a riparian owner and whose dam and works would be affected. Townsend gave his consent, thus relieving the state from embarrassment, and the water company from great loss. The waste-weir was therefore accorded

to him in consideration of his consent, and release of his own damages. The contract was carried into execution, the waste-weir made and permitted to remain for a period of about forty years. The contract was an existing one, when the state transferred the canal to the Erie Canal Company under the Act of 7th March 1843, Pamph. L. 36, and therefore fell directly within the terms of the 17th sect. of that act, binding the canal company for all contracts theretofore made for the grant or lease of water privileges. Hence it is quite immaterial to discuss the power of the state herself to abandon the canal and defeat the privilege. She always recognised the contract, and her grantee was bound to do so by the charter. The power of the canal company to abandon the canal without the consent of the state depends on the terms and nature of the charter. The charter contemplated no such power. It was perpetual until a resumption of the canal by the state, under the reservation of this right in the charter. This reserved right was afterwards released by the state for a valuable consideration. See Act of 8th May 1855, Pamph. L. 518.

The grant of the charter was for a public purpose, the transportation of freight and passengers by canal and slackwater navigation. This public benefit brought the canal into existence, and justified the taking of private property for the public use. So long, therefore, as the company was able, it was bound to keep up the canal and works for the use of the public; and while this ability continued, Townsend and his assigns were entitled to the waste-weir, and the use of the water flowing through it. But with the loss of ability to perform this public duty, came a new condition of affairs. The law then stepped in and permitted a judicial sale in due course of procedure, of the property of the insolvent corporation for the payment of its debts. What the corporation could not do the law brought about. Hence, a sheriff's sale swept away the property of the company. Here we are confined by the finding of the facts in the court below to a very narrow compass, the writs, levy, and return of sale not being before us. It is found by the court, that the *lands*, locks and appurtenances became vested by sheriff's sale, followed by other conveyances in the defendants, now the appellants. It is not said that the franchises were sold, and we presume they were not, as it is also said that the canal, as such, and for all purposes of navigation, has been entirely abandoned; a fact inconsistent with the use of the franchise. The abandonment it seems took place in 1872, soon after the sale. These facts indicate that the sale was made under the Act of 7th April 1870, 1 Br. Purd. 291, pl. 52. That act allows a sale of the property of a corporation in one county alone, or the levy may extend to other counties. As we understand the facts stated, the property in Beaver county only was sold, vesting in the purchasers only a section of the canal, locks, &c.

Giving full effect to the sheriff's sale, as probably vesting a title

to the land in fee, according to Craig *v.* City of Allegheny, 3 P.
F. Smith 477, and Haldeman *v.* Pennsylvania Railroad Company,
14 Wright 425, still the question remains whether the purchasers
are not bound to recognise the nature of the subject of the sale, to
wit, a canal and its works, and to take notice of the superior rights
of third persons existing in full force at the time of the sale. They
bought a canal bed through which the water was flowing to the
mill of the appellee. The subject of the sale and. its incidents
were visible, and the maxim of the law is *caveat emptor*. They
saw, or might have seen the appellee in the use of the waste-weir
and water flowing over it. They were put upon notice, and by in-
quiry might readily have learned the foundation of the appellee's
right—that it proceeded from a contract with the state, recognised
by her until she transferred the canal to the company, which she
bound to observe it. They knew, therefore, or ought to have
known, that the company took subject to a superior right, which
could not be extinguished by a sheriff's sale. Though not an ease-
ment in the ordinary sense, this contract privilege was an encum-
brance on the property of the company. The land in the hands of
the company was necessary to fulfill the contract, and was there-
fore burdened with the duty of maintaining the flow of water,
which was essential to the maintenance of the canal as well as the
privilege of the. appellee. The duty of doing both rested on the
the company by its charter.

The purchasers of the property at sheriff's sale, therefore, took
the land burdened with the superior right of the appellee to use the
water at the waste-weir. Now, though the purchasers probably did
not take the franchise, and were not bound to maintain the canal
for public use, yet having bought subject to the superior right of
the appellee to use the water at the waste-weir, they cannot stop
the flow of water to the waste-weir to the extent of the privilege
granted by the canal commissioners in 1834 and accepted by Town-
send in 1835. To hold otherwise would be to declare that the pur-
chaser of a subjected title with notice of the subjection stands on
higher ground than the owner. It would defeat an acknowledged
right by a sort of legal disintegration of the subject-matter of the
sale, against the solemn contract of the state, which she carefully
provided for and devolved upon her assignee in express terms.
The Act of 1870 is anomalous, it is true, in allowing a piecemeal
sale of property, which should remain a unit for public uses, but it
ought not to be so interpreted as to do unnecessary injustice. *Lex
nemini facit injuriam.* These purchasers, though perhaps not
bound under this sale to maintain the canal have no right to prevent
or impair the flow of the water so long as it will flow to the waste-
weir for the use of the appellee.

> Decree affirmed with costs to be paid by the appellants
> and the appeal dismissed.